# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

DESTINY M. THURMAN,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 17-CV-35-LRR

**ORDER**

_____

*I.     INTRODUCTION..................................................................1*
*II.    RELEVANT PROCEDURAL HISTORY...................................................2*
*III.   STANDARD OF REVIEW............................................................2*
    *A.    Review of Final Decision................................................2*
    *B.    Review of Report and Recommendation.....................................4*
*IV.    OBJECTIONS....................................................................6*
    *A.    Credibility Determination...............................................6*
    *B.    Medical Opinions.......................................................10*
    *C.    RFC Assessment.........................................................14*
*V.     SUPPLEMENTAL BRIEF...........................................................16*
*VI.    CONCLUSION...................................................................18*

## *I. INTRODUCTION*

The matter before the court is Plaintiff Destiny M. Thurman's Objections (docket no. 20) to United States Magistrate Judge Kelly K.E. Mahoney's Report and Recommendation (docket no. 17), which recommends that the court affirm Defendant Commissioner of Social Security's ("Commissioner") final decision to deny disability benefits to Thurman.

## II. RELEVANT PROCEDURAL HISTORY

On April 13, 2017, Thurman filed a Complaint (docket no. 3), seeking judicial review of the Commissioner's final decision denying Thurman's application for Title XVI Supplemental Security Income ("SSI") benefits. On June 23, 2017, the Commissioner filed an Answer (docket no. 7). On September 26, 2017, Thurman filed the Plaintiff's Brief (docket no. 11). On October 20, 2017, the Commissioner filed the Defendant's Brief (docket no. 15). On November 15, 2017, the matter was referred to Judge Mahoney for issuance of a report and recommendation. On June 28, 2018, Judge Mahoney issued the Report and Recommendation. On July 12, 2018, Thurman filed the Objections. On July 19, 2018, Thurman filed a Supplemental Brief (docket no. 22). On August 1, 2018, the Commissioner filed a Response to the Objections (docket no. 27). On August 23, 2018, the Commissioner filed a Response to the Supplemental Brief (docket no. 29). On August 30, 2018, Thurman filed a Reply Brief (docket no. 30). The matter is fully submitted and ready for decision.

## III. STANDARD OF REVIEW

### A. *Review of Final Decision*

The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). *See* 42 U.S.C. § 1383(c)(3). Pursuant to 42 U.S.C. § 405(g), the court has the power to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's factual findings shall be conclusive "if supported by substantial evidence." *Id*. "The court 'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it

as adequate to support a decision." *Fentress v. Berryhill*, 854 F.3d 1016, 1019-20 (8th Cir. 2017) (quoting *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007)).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the [administrative law judge ("ALJ")], but [it] do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress*, 854 F.3d at 1020; *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (providing that review of the Commissioner's decision "extends beyond examining the record to find substantial evidence in support of the [Commissioner's] decision" and noting that the court must also "consider evidence in the record that fairly detracts from that decision"). The Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991)). The court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "An ALJ's decision is not outside the zone of choice simply because [the court] might have reached a different conclusion had [the court] been the initial finder of fact." *Id.* (quoting *Bradley*, 528 F.3d at 1115). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a

different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## B. *Review of Report and Recommendation*

The standard of review to be applied by the court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (providing that, when a party properly objects to a report and recommendation on a dispositive motion, a district court must review de novo the magistrate judge's recommendation). The Eighth Circuit has repeatedly held that it is reversible error for a district court to fail to conduct a de novo review of a magistrate judge's report and recommendation when such review is required. *See, e.g.*, *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995); *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). The statute governing review provides only for de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). When a party fails to object to any portion of a magistrate judge's report and recommendation, he or she waives the right to de novo review. *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994). The United States Supreme Court has stated that "[t]here is no indication that Congress, in enacting § 636(b)(1)[ ], intended to require a district judge to review a magistrate's report to which no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 152 (1985). However, "while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review

4

by the district judge, sua sponte or at the request of a party, under de novo or any other standard." *Id*. at 154.

The Eighth Circuit has suggested that in order to trigger de novo review, objections to a magistrate judge's conclusions must be specific. *See Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989); *see also Belk*, 15 F.3d at 815 (noting that some circuits do not apply de novo review when a party makes only general and conclusory objections to a magistrate judge's report and recommendation and finding that *Branch* indicates the Eighth Circuit's "approval of such an exception"); *Thompson v. Nix*, 897 F.2d 356, 357-58 (8th Cir. 1990) (reminding parties that "objections must be . . . specific to trigger de novo review by the [d]istrict [c]ourt of any portion of the magistrate's report and recommendation"). The Sixth Circuit Court of Appeals has explained this approach as follows:

> A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error. We should not permit appellants to do the same to the district court reviewing the magistrate's report.

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *see also Goney v. Clark*, 749 F.2d 5, 6 n.1 (3d Cir. 1984) (finding that "plaintiff's objections lacked the specificity necessary to trigger de novo review"); *Whited v. Colvin*, No. C 13-4039-MWB, 2014 WL 1571321, at *2-3 (N.D. Iowa Apr. 18, 2014) (concluding that, because the plaintiff "offer[ed] nothing more than a conclusory objection to . . . [the report

5

and recommendation] . . . [the plaintiff's] objection [should be treated] as if he had not objected at all"); *Banta Corp. v. Hunter Publ'g Ltd. P'ship*, 915 F. Supp. 80, 81 (E.D. Wis. 1995) ("De novo review of a magistrate judge's recommendation is required only for those portions of the recommendation for which particularized objections, accompanied by legal authority and argument in support of the objections, are made.").

## IV. OBJECTIONS

In the Objections, Thurman argues that: (1) Judge Mahoney generally erred in concluding that the ALJ's credibility determination is supported by substantial evidence, and, in particular, asserts that Judge Mahoney improperly found that the ALJ correctly determined that Thurman's sporadic work history undermined her credibility; (2) Judge Mahoney improperly weighed medical opinions in the record; and (3) Judge Mahoney erred in concluding that the ALJ's residual functional capacity ("RFC") determination is supported by some evidence. *See* Objections at 2-4. After conducting a de novo review of the objected-to portions of the Report and Recommendation and the Administrative Record ("AR") (docket nos. 8-1 through 8-7), the court shall overrule the Objections.

### A. Credibility Determination

Thurman objects to Judge Mahoney's finding that, "[b]ecause the ALJ in this case provided good reasons for not fully crediting Thurman's subjective complaints, [the ALJ's] assessment should be affirmed." Report and Recommendation at 9. Thurman raises two arguments in the Objections. First, relying on Plaintiff's brief, Thurman argues that Judge Mahoney erred "generally in [her] treatment of this issue." Objections at 2. Second, Thurman argues that Judge Mahoney improperly "endorsed the ALJ's finding that Ms. Thurman's sporadic work history undermined her credibility." *Id*.

When assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)."

6

*Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). In *Polaski*, the Eighth Circuit stated that:

> [t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions.

739 F.2d at 1322. The ALJ, however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). If an ALJ discounts a claimant's subjective complaints, he or she is required to "make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the *Polaski* factors." *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (stating that an ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found'" (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003))). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and

gives good reason for doing so, we will normally defer to the ALJ's credibility determination."). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In the decision, the ALJ determined that, "[i]n terms of [Thurman's] alleged limitations, the medical evidence of record does not support a finding of total disability." AR at 17. The ALJ noted that:

> Generally, mental status examinations showed some anxiety, but there were no cognitive problems noted on exam. [Thurman's] Global Assessment of Functioning scores were consistently rated in the moderate range of symptoms/functioning in the 50s. She reported doing okay and denied problems with personal care or needing reminders to take care of personal needs/grooming or to take medication. She is able to drive a car and navigate the community independently. She reported shopping in stores and indicated that she is able to manage money.

*Id*. The ALJ further stated:

> Although [Thurman] has described significant symptoms and daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding [Thurman] disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if [Thurman's] daily activities are truly limited as alleged, it is difficult to attribute that degree of limitation to [Thurman's] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, [Thurman's] reported symptoms and limited daily activities are considered to be outweighed by the other factors discussed in this opinion.

*Id*. at 18. The ALJ also stated:

> Records indicate [Thurman] has sought treatment for her impairments. While her mental condition does cause some

> problems, she is able to handle [her] own affairs. While she may have some difficulty with extended periods of concentration and interacting with others, she is able to follow simple instructions and complete assigned tasks, is able to care for her personal needs, prepare simple meals, perform basic household chores, drive and shop when necessary. Based on the evidence, the undersigned has determined that she can adjust to other work that is unskilled in nature and requires limited contact with others.

*Id*. Finally, the ALJ noted that "[i]n her entire work history, [Thurman] has never worked long enough during the course of a calendar year to earn substantial gainful activity wages" and "[h]er sporadic work history raises some questions as to whether the current unemployment is truly the result of medical problems." *Id*. at 19.

It is clear from the ALJ's decision that he thoroughly considered and discussed Thurman's treatment history, medical history, functional restrictions, activities of daily living and use of medications in making his credibility determination. The ALJ also properly considered Thurman's work history in finding her subjective allegations of disability less than credible. *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) (finding that a claimant's "poor employment history [which] suggested a lack of motivation to work" was a proper factor for the ALJ to rely on in discounting her subjective allegations of disability); *Wildman*, 596 F.3d at 968-69 (finding that consideration of a claimant's "sporadic work history" was a proper factor for the ALJ to rely on to discredit a claimant's subjective allegations of disability).

Thus, having reviewed the entire record, the court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Thurman's subjective allegations of disability were not credible. *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (noting that an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints). Therefore, because the ALJ seriously considered, but

for good reasons explicitly discredited, Thurman's subjective complaints, the court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. Accordingly, the court shall overrule this objection.

### B. *Medical Opinions*

Thurman objects to Judge Mahoney's finding that "[t]he ALJ provided specific reasons, which . . . are supported by substantial evidence in the record, for not giving great weight to the opinions of Dr. Husman and the rest of Thurman's treatment team," which included Joan Tatarka, a licensed social worker. Report and Recommendation at 11. Thurman argues that Judge Mahoney erred in finding that the ALJ's discussion of inconsistencies between Dr. Husman's opinions and Tatarka's opinions constituted "a good reason for the weight afforded to these opinions because it was never a reason relied on by the ALJ." Objections at 2. Thurman also argues that Judge Mahoney erred in accepting the ALJ's conclusion that the opinions of Dr. Husman and Tantarka should be discounted because "Thurman was not generally credibly reporting her limitations to social security, she probably was not generally credibly reporting her limitations to her treatment team, and her treatment team was probably parroting her reports." Objections at 3. Lastly, Thurman argues that Judge Mahoney erred in finding that a global assessment of functioning ("GAF") score "greater than 50 in a treating opinion provides a good reason for discounting that opinion." Objections at 4.

Dr. Husman, as Thurman's treating psychiatrist, is an "acceptable medical source." *See* 20 C.F.R. § 416.902(a) (providing that an "[a]cceptable medical source means a medical source who is a . . . [l]icensed physician (medical or osteopathic doctor)"). As such, "[t]he opinion of a treating physician is generally afforded 'controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic

10

techniques and is not inconsistent with the other substantial evidence in the record.'" *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Wildman*, 596 F.3d at 964). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *See Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008). When an ALJ discounts a treating physician's opinion, he or she "must 'give good reasons' for doing so." *Chesser*, 858 F.3d at 1164 (quoting *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012)). "Good reasons for assigning lesser weight to the opinion of a treating source exist where 'the treating physician's opinions are themselves inconsistent,' *Cruze* [*v. Chater*], 85 F.3d [1320,] 1325 [(8th Cir. 1996)], or where 'other medical assessments are supported by better or more thorough medical evidence,' *Prosch* [*v. Apfel*], 201 F.3d [1010,] 1012 [(8th Cir. 2000)]." *Id*.

Tatarka, however, as a licensed social worker, is not classified as an "acceptable medical source" under the Social Security Regulations. *See* 20 C.F.R. § 416.902(a) (listing medical providers that constitute an "acceptable medical source"); *see also Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir. 2016) (classifying a licensed clinical social worker/therapist as not an "acceptable medical source"); *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (classifying licensed clinical social workers and therapists as "other sources" in contrast to "acceptable medical sources"); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (providing that "other sources" include "[m]edical sources who are not 'acceptable medical sources,'" such as "nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists"). In *Sloan*, the Eighth Circuit has explained that:

> Information from these "other sources" cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

499 F.3d at 888 (quotations omitted). In considering "other souces," such as Tatarka, "the ALJ may consider, among other things, the length of treatment relationship, whether the opinion is consistent with other evidence, the evidence underlying the opinion, and the quality of the opinion's explanation." *Chesser*, 858 F.3d at 1166 (citing SSR 06-03p, 2006 WL 2329939 at *4-5). In determining the weight to be afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

The ALJ addressed Dr. Husman's and Tatarka's opinions as follows:

> [Thurman's] treating psychiatrist and licensed social worker offered medical source statements opining limitations in function due to [Thurman's] conditions (Exhibit 9F, 10F), as well as copies of the Iowa Department of Human Services "Report on Incapacity" forms (Exhibit 12F). The opinions offer significant levels of disability with marked to extreme limitations in various areas of functioning, although the psychiatrist and licensed social worker contradict each other in several areas from limits in daily activities versus concentration, persistence, and pace. They overall indicate that [Thurman] has significant restrictions in interacting with others and generally adhering to a work schedule/atmosphere. The providers apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Thurman], and seemed to uncritically accept as true most, if not all, of what [Thurman] reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of [Thurman's] subjective complaints. In turn, the provider's opinions are without substantial support from the

12

> other evidence of record, including h[er] own longitudinal treatment history of [Thurman] that was routine and conservative management with no more than moderate symptomology and Global Assessment of Functioning scores in similar range, which obviously renders it less persuasive. The undersigned therefore declines to afford these opinions great weight.

AR at 19. Additionally, in his decision, the ALJ thoroughly reviewed Thurman's mental health history and treatment, and noted inconsistencies between her claims of disability and her functional abilities and successful treatment. *See generally* AR at 17-18 (ALJ's review of Thurman's mental health history and treatment). For example, the ALJ found that:

> [Thurman] noted some mood swings at times but has often reported doing pretty well and [being] stable on her medication regimen. . . . Generally, mental status examinations showed some anxiety, but there were no cognitive problems noted on exam. Her Global Assessment of Functioning scores were consistently rated in the moderate range of symptoms/functioning in the 50s. She reported doing okay and denied problems with personal care or needing reminders to take care of personal needs/grooming or to take medication. She is able to drive a car and navigate the community independently. She reported shopping in stores and indicated that she is able to manage money. . . . During the course of treatment, [Thurman] did not report problems with memory, attention, or concentration noting she can pay attention for an hour and follow instructions well.

*Id*. at 17.

Having reviewed the entire record, the court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Husman. The court further finds that the ALJ properly considered Tatarka's opinions in accordance with SSR 06-03p. The ALJ articulated good reasons for discounting the opinions of Dr. Husman and Tatarka, and for finding the opinions to be inconsistent with the record as a whole. *See Chesser*, 858 F.3d at 1164 (requiring an ALJ to give good reasons for discounting the opinions of a treating

source, including discounting a treating source opinion "where the treating physician's opinions are themselves inconsistent"); *Raney*, 396 F.3d at 1010 (providing that in considering the opinions of a medical source that is not an "acceptable medical source," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record"); *Kirby*, 500 F.3d at 709 (providing that an ALJ is entitled to give less weight to a medical source opinion where the opinion is based on a claimant's subjective complaints rather than on objective medical evidence); *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (providing that GAF scores between 52 and 60 supported an ALJ's finding of moderate symptoms and discounting a treating physician's more extreme opinions).[1] Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. Accordingly, the court shall overrule this objection.

### C. RFC Assessment

Here, Thurman offers a purely conclusory argument and states only that she "continues to rely on her principal brief, and objects to the [Report and Recommendation] generally in its treatment of this issue." Objections at 4. The court presumes that Thurman objects to Judge Mahoney's conclusions that "[t]he record contained sufficient information for the ALJ to determine Thurman's functional limitations, and the ALJ's RFC determination is supported by some medical evidence." Report and Recommendation at 22. Initially, the court notes that Thurman's argument fails to comply with the Local Rules, which require "[a] party who objects to . . . a magistrate judge's report and

---

[1] Contrary to Thurman's assertion that the record lacks "a robust GAF score history," a review of the record shows that Dr. Husman assessed Thurman's GAF score seven times. In all seven assessments, Dr. Husman gave Thurman a GAF score between 62 and 64. *See* AR at 373, 387-88, 390, 432, 435, 437. Tatarka assessed Thurman's GAF score twice with scores of 58 and 62 respectively. *See id*. at 352, 380.

recommendation" to "file *specific*, written objections to the . . . report and recommendation." LR 72A. (emphasis added). Moreover, Thurman's failure to object to Judge Mahoney's findings regarding the ALJ's RFC determination with any specificity means that Thurman has waived her right to de novo review of this issue. *See Thompson*, 897 F.2d at 357-58 (providing that "objections must be . . . specific to trigger de novo review by the [d]istrict [c]ourt of any portion of the magistrate's report and recommendation"). Nevertheless, out of an abundance of caution, and in this instance, the court shall review the ALJ's RFC determination de novo. *See Thomas*, 474 U.S. at 154 (providing that, while de novo review is not required when a party fails to object to a magistrate judge's report and recommendation, the court may apply "de novo or any other standard [of review]").

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the RFC to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors such as age, education and work experience. *See Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *See Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Id.* (alteration in original) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)).

Additionally, an ALJ "has a duty to fully and fairly develop the evidentiary record." *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012); *see also Smith v. Barnhart*, 435

15

F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

The ALJ thoroughly addressed and considered Thurman's medical and treatment history. *See* AR at 17-19 (providing a thorough discussion of Thurman's overall medical history and treatment). The ALJ also properly considered and thoroughly addressed Thurman's subjective allegations of disability in making his overall disability determination, including determining Thurman's RFC. *See id*. at 18-19 (providing a thorough review of Thurman's subjective allegations of disability). Therefore, having reviewed the entire record, the court finds that the ALJ properly considered Thurman's medical records, observations of treating physicians and Thurman's own description of her limitations in making the RFC assessment for Thurman. *See id*. at 17-19 (providing a thorough discussion of the relevant evidence for making a proper RFC determination); *see also Combs*, 878 F.3d at 646 (explaining what constitutes relevant evidence for assessing a claimant's RFC). Furthermore, the court finds that the ALJ's decision is based on a fully and fairly developed record. *See Byes*, 687 F.3d at 915-16. Because the ALJ considered the medical evidence as a whole, the court concludes that the ALJ made a proper RFC determination supported by some medical evidence. *See Combs*, 878 F.3d at 646; *Guilliams*, 393 F.3d at 803. Accordingly, the court shall overrule the objection.

## V. SUPPLEMENTAL BRIEF

In the Supplemental Brief, Thurman contends that the ALJ that decided Thurman's claim "was an inferior officer not appointed in a constitutional manner" and, therefore, the ALJ's decision must be vacated and the case must be remanded to be decided by a properly appointed ALJ. Supplemental Brief at 1-2. Thurman relies on *Lucia v. S.E.C.*, ___ U.S.

___, 138 S. Ct. 2044 (2018), which held that ALJs for the Securities and Exchange Commission are "Officers of the United States," and therefore, are subject to the Appointments Clause. 138 S. Ct. at 2055.

In *Lucia*, the Supreme Court stated that "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." *Id*. at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182-83 (1995)). The Supreme Court further stated that the plaintiff had "made just such a timely challenge: He contested the validity of [the presiding ALJ's] appointment before the Commission, and continued pressing that claim in the Court of Appeals and this Court." *Id*. Unlike the plaintiff in *Lucia*, Thurman did not contest the validity of the Social Security Administration ALJ who decided her case at the agency level. The record clearly demonstrates that Thurman did not raise her Appointments Clause argument before either the ALJ or the Appeals Council. Rather, Thurman raised this issue for the first time to this court on judicial review, after Judge Mahoney had issued the Report and Recommendation. Because Thurman did not raise her Appointments Clause challenge before the ALJ or Appeals Council, the court finds that she has waived this issue. *See N.L.R.B. v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013) (concluding that a plaintiff who raised an Appointments Clause challenge "waived its challenge to the Board's composition because it did not raise the issue before the Board"); *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (finding that a claimant's failure to raise a disability claim during the administrative process "waived [the claim] from being raised on appeal"); *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) ("[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." (quoting *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999))); *Trejo v. Berryhill*, No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018) ("To the extent *Lucia* applies to Social Security ALJs,

[the] [p]laintiff has forfeited the issue by failing to raise it during her administrative proceedings.").

Thurman asserts that "[i]t should be noted that *Sims v. Apfel*, [530 U.S. 103 (2000)] controls concerning the potential waiver issue . . . for parties wishing to raise Appointments Clause issues for the first time in federal court, as there is no waiver of issues by claimants for failing to present them to the Appeals Council." Supplemental Brief at 6. Thurman's argument is without merit. The Ninth Circuit Court of Appeals addressed a similar argument and explained that "*Sims* concerned only whether a claimant must present all relevant issues *to the Appeals Council* to preserve them for judicial review; the [Supreme] Court specifically noted that '[w]hether a claimant must exhaust issues before the ALJ is not before us.'" *Shaibi*, 883 F.3d at 1109 (second alteration in original) (quoting *Sims*, 530 U.S. at 107). Here, Thurman did not present her Appointments Clause challenge to the ALJ *or* the Appeals Council. Thus, the Eighth Circuit's finding in *Anderson*, that a claimant's failure to raise an issue during the administrative process waives the claim from being raised on appeal, is not affected by the holding in *Sims*. *See* 344 F.3d at 814. The court concludes that Thurman's Appointments Clause argument is waived.

### *VI. CONCLUSION*

In light of the foregoing, it is hereby **ORDERED**:

(1) The Objections (docket no. 20) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 17) is **ADOPTED** and the final decision of the Commissioner is **AFFIRMED**; and

(3) The Complaint (docket no. 3) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**DATED** this 10th day of September, 2018.

_____
LINDA R. REApE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA